## Adam Moyer, Sr., Appt., *v.* John Moyer et al.

That the person who furnishes the purchase money for land becomes thereby the equitable owner of the land purchased is a mere implication or presumption, which may be rebutted—as, *e. g.*, by proof that the money was furnished as a loan to the taker of the legal title.

A mere declaration by one that he purchased for another, without any previous agreement to that effect or without an advance of money, raises no trust which equity will support.

A son contracted with the owner of land for its purchase, and paid the hand money; thereafter the son received from his father the amount of the purchase money, and took a deed in his own name, and proceeded to build a house on the land, and made leases for other tenements on the land in his own name, and the property was assessed to him for taxation; the father lived with the son in the house built by the latter on the purchased property. The son subsequently conveyed the property to his brother, and

Cited in McCormick v. Cook, 25 Pa. Co. Ct. 289, 292.

NOTE.—For proof of resulting trusts, see note to Ackley v. Ackley, 1 Sad. Rep. 138; Longdon v. Clouse, 1 Sad. Rep. 178; and Buck v. Henderson, 3 Sad. Rep. 111.

thereafter the father filed a bill in equity, alleging that the son had pur-chased the property as his agent, that he (the son) had taken the title in his own name in violation of his authority; that his conveyance thereof to his brother was in violation of his trust, to the knowledge of the grantee, and praying that the title be conveyed to complainant. *Held:*

(*a*) That the evidence failed to show any agreement or promise by the son to buy the property as agent for the father, or for his benefit, or to stand seised of the same for his use.

(*b*) That the implication or presumption arising from the use by the son of money received from the father in the purchase of the land, that the father was the equitable owner of the land, was rebutted by evidence tending to show that the money was advanced by the father merely as a loan to the son.

(*c*) That the character of the possession of the complainant added nothing to the implication that he was the equitable owner, as it was referable to the relation of parent and child and was qualified by the fact that the complainant had had his home with the son prior to the removal to the land in question.

(*d*) That the preponderance of evidence was not in favor of a resulting trust, and, hence, that the bill should be dismissed.

(Argued April 18, 1888. Decided May 14, 1888.)

January Term, 1888, No. 77, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, CLARK, and WILLIAMS, JJ. Appeal from a decree of the Court of Common Pleas of Centre County dismissing a bill in equity, April term, 1884, No. 91. Affirmed.

The case was referred to John B. LINN, Esq., as master and examiner, who presented the following report, wherein the case and facts are stated:

The bill in equity in this case was filed by Adam Moyer against his sons, John and Peter Moyer, on February 23, 1884, alleging in substance that on or about December 25, 1881, the complainant had authorized and empowered John, as his agent, to purchase for him, the complainant, from Amos W. Newman, a certain lot of ground in Philipsburg, Centre county, fully described by metes and bounds in the bill, being the southwestern half of lot No. 87, so numbered in the general plan of the borough of Philipsburg; and that John, acting as agent of the complainant, did purchase said lot for the sum of $1,000; that John, instead of making a contract in the name of his father, made the same in his own name, in viola-tion of his alleged authority, etc., *pro ut* the bill; that about the middle of January, 1884, John had, without the knowl-

edge or consent of the complainant, and in violation of the alleged trust, conveyed the lot to Peter Moyer, the other defendant in the bill; that Peter Moyer had full knowledge of the trust, and was therefore not an innocent purchaser, etc.

John Moyer died on March 4, 1884, without making answer. Peter filed an answer, denying under oath all these material allegations and averring that he had no knowledge, information, or intimation that complainant claimed or alleged any claim to the premises; and this was followed, January 16, 1885, by the sworn answer of Nannie M. Moyer (widow of John), in which she deposes to the truth of the facts set forth in Peter's answer, except his statement of the cost of the building erected on the lot, which she averred was but $1,000 instead of $2,000, as Peter had alleged.

The questions raised by these pleadings are: (1) Whether Adam Moyer, Sr., has a resulting interest in the messuage and lot described in the bill; (2) whether Peter Moyer is a purchaser for a valuable consideration without notice of the rights of his father, Adam Moyer, Sr., the plaintiff.

From the testimony submitted to the master he finds the following facts:

1. That prior to December 1, 1881, both complainant and defendants were entire strangers to the title to the lot in dispute, the same being in Amos W. Newman.

2. That the legal title to the lot described in the bill was duly vested in John Moyer when he conveyed the same to Peter Moyer, his codefendant.

3. That the negotiations for the purchase of the lot were conducted entirely by said John Moyer, in pursuance of which an agreement in writing was entered into between Amos W. Newman and the said John Moyer, dated the 19th day of December, 1881, for the conveyance by the said Newman to said John Moyer of the lot of ground in dispute, in fee simple, clear of all encumbrances, by a good and sufficient warranty deed, in consideration of the sum of $1,000, $20 cash in hand, the receipt of which is hereby acknowledged, and the balance on or before January 2, 1882.

4. That the hand money upon the agreement, to wit, the sum of $20, was furnished and paid by John Moyer, and not by the complainant.

5. That Amos W. Newman proving recusant, John Moyer

delivered his article of agreement to counsel at Bellefonte, and, January 6, brought his action of ejectment for the land described in the agreement to No. 193, January term, 1882. Mr. Newman thereupon complied with his agreement, and January 9, 1882, executed and acknowledged a proper conveyance for the lot described in the bill to John Moyer, duly recorded January 20, 1882.

6. That on January 2, 1882, Adam Moyer, Sr., gave his check for $1,000, payable to John Moyer, on the Philipsburg Banking Company, which check was cashed on the same day; that on the evening of the same day, after making a tender of the balance of the purchase money to Amos W. Newman, which was refused, John left with Mr. Laurie a roll of money to be deposited in bank the next morning; that accordingly $980 was deposited January 3, 1882, to the credit of John Moyer in the books of the Philipsburg Banking Company, and the same was withdrawn by John Moyer on January 9, 1882, being the same day of the date of the acknowledgment of the deed from Newman to John Moyer.

7. That at the date of the purchase from Newman there were three tenements on the lot in the occupancy of tenants under A. W. Newman. On the two-story frame dwelling then on the lot John Moyer purchased a policy of insurance, in his own name, February 3, 1882; this he again insured February 3, 1883, and, after the building of a new house on the lot, purchased a policy of insurance in his own name, dated November 18, 1882, for three years, on the latter dwelling.

8. That from and after January 9, 1882, John Moyer collected all the rents of these tenements, giving receipts in his own name, and making leases therefor in his own name up to the date of his sale to Peter Moyer, without objection on part of his father.

9. That the lot in dispute, with its tenements, was assessed in the annual assessments of the borough of Philipburg in the name of John Moyer as owner during the years 1882, 1883, and 1884.

10. That at the date of the purchase from Newman, Adam Moyer, Sr., was living with his son John on the Rooke property, not very far from the Newman lot, in the borough of Philipsburg; that John Moyer, immediately after his purchase, commenced building a new house on the Newman lot, and moved into it in May, 1882; his father went with him, occupy-

ing a room and boarding with John until the fall of 1882, when he went to the west; came back from the west about May 1, 1883, and resumed living with his son John.

11. That in the erection of the new building on the lot John Moyer himself worked thereat, paid laborers assisting him in building it, kept the time of the hands, engaged carpenters and the plumber and paid them; he excavated the cellar and paid for stone for cellar wall, and paid for some of the lumber and for some of the hardware; that the building cost about $900; to defray it, Adam Moyer, Sr., furnished the sum of $609.14.

12. That the complainant has failed to show that before December 19, 1881, when the agreement was made by John Moyer with Amos W. Newman for the purchase of the lot, or on or about that day, or on or about the second day of January, 1882, when the deed was to be delivered, or that on or about the 9th day of January, 1882, when the deed from Newman to John Moyer was acknowledged and delivered, John Moyer, his son, either agreed or promised him, the said Adam Moyer, that he (John), would buy the lot as agent of said Adam, or for the benefit of the said Adam, or stand seised of the same for the use of the said Adam.

Under this state of facts and the testimony submitted him, the master is of the opinion that, if any resulting trust arose in favor of Adam Moyer, Sr., in the premises in controversy, it arose on January 2, 1882, when Adam Moyer, Sr., gave his check to John Moyer, one of the defendants, for the sum of $1,000. The law applicable to this fact is laid down by Judge WOODWARD, in Edwards v. Edwards, 39 Pa. 377: "The ownership of the money which purchased draws to itself the beneficial or equitable interest in the estate. And such equitable title, though resting generally in parol proof, is expressly exempted from the statute of frauds and perjuries. Still it is a mere implication or presumption that he who pays purchase money is the equitable owner of that which is purchased."

The master holds, and so reports, that the plaintiff has failed to show that the $1,000 given by him to his son John on January 2, 1882 (although used afterwards in the payment of the balance of the purchase money), was at that time impressed with a trust that John should purchase the property for his father, or as his agent by any contract or agreement, verbal or otherwise. That it was not impressed with such a

trust is clear to the master from the testimony of O. L. Schoon-over. That it was impressed with the character of a mere loan appears from the testimony of Adam May, D. W. Roop, and Jacob Sherer, as to declarations of Adam Moyer subsequent to the purchase. The implication·or presumption arising from the use by John of money received from his father, in the purchase of the property, that Adam Moyer, Sr., was the equitable owner, is rebutted by the declarations of the latter to officials charged with the collection of taxes assessed on the property, "that the property belonged to John, and John was to pay the taxes" (see testimony of William H. Sanford and Joseph Brown, Sr.), and the weight of the testimony in the case.

The master further reports that the character of the possession of the complainant adds nothing to the implication or presumption that he was the equitable owner, as it is referable to their relation as parent and child, and qualified by the fact that Adam Moyer, Sr., had his home with, boarded or lodged with, John for some time prior to John's removal to the lot in question.

There are, in proof, declarations made by John subsequent to the inception of the purchase, "that the lot was for his father," "that he was buying it for his father," but as said by Judge AGNEW in Williard v. Williard, 56 Pa. 119: "A mere declaration of one that he purchased for another, without any previous agreement or without an advance of money, raises no trust which equity will support."

"Weighing the testimony of the witnesses in those equal scales by which justice tries all conflicting proofs," the master reports that the preponderance is not in favor of the resulting trust alleged in the plaintiff's bill, but establishes rather the fact that Adam Moyer, Sr.'s, advances to John on account of the purchase money of the lot, and toward the erection of the building thereon, were loans.

It follows, therefore, that the prayers of the plaintiff in this bill must be refused.

The master submitted a decree dismissing the bill, with costs.

The nature of the testimony referred to by the master appears from the following extracts:

O. L. Schoonover, sworn for defendants:
Know parties to this suit and knew John Moyer, now dead;

known them fifteen or twenty years; had conversation with Adam Moyer, Sr., about lot in Philipsburg, Amos Newman's lot; can't recollect the time; only recollect it was after John purchased the Newman property, perhaps a week after or more; I had one or two conversations; I don't know who was by, if anyone; I commenced it, I think; he (Adam) said John had bought the property for $1,000, and he thought it was a good bargain, and he had offered him $600 for his bargain, but John would not take it; he said John had not the money to pay for it, and he (Adam) was going to furnish him with the money; I said he had better have some kind of security, as he had just got out of one trouble with his boys; he asked me what security he had better take; I said either mortgage, or judgment, or deed of the property would be safe enough; I thought least trouble would be take a deed of it; he could then assign or transfer it to John, when he got back his money; he said he thought he would do that, get the deed made to him.

Adam May, sworn for defendants:

I had a conversation with Adam Moyer, Sr., at the Passmore House, in the afternoon; nobody by that I noticed; Adam, Sr., commenced to talk; he said he gave John some money to pay for that property; now they are trying to take it away from him; he said: "I loaned him money and he never paid me back; now I am going to try to take this property away from him if I can;" did not tell me why.

William H. Sanford, sworn for defendants:

Am cashier of the Moshannon Bank; was borough treasurer of Philipsburg in 1883; borough tax of 1883 was paid to me; know Amos Newman's lot; had taxes against Newman lot; John Moyer is at back end of Newman's name; I think I had a talk with Adam Moyer, Sr., about the tax; he said he had nothing to do with the property, it belonged to John Moyer and John was to pay the taxes; he (Adam) refused to pay the taxes; this was before John Moyer's death; I afterwards received them from Adam Moyer, Sr.; this was after John's death; I called his attention to them; I think it was in January, 1885.

The complainant filed exceptions to the master's report, which were overruled by the court, SIMONTON, J., and a decree entered dismissing the bill, with costs; and thereupon complainant appealed, assigning as error the action of the court: (1) In finding and holding that the money furnished by the complainant

to John Moyer, for the purchase of the premises in question, was an advancement, and in overruling the finding of the master, in that particular; (2) in finding that there was not sufficient evidence to rebut the presumption of the money furnished by Adam Moyer, Sr., to John Moyer, to purchase said lot, being an advancement—even if the master were mistaken in finding that the money was furnished as a loan—so as to convert the transaction into one of trust; (3) in not finding that the money furnished by Adam Moyer, Sr., to John Moyer, for the purchase of the lot from A. W. Newman, and with which it was purchased, and John Moyer taking the title thereof in his own name created a trust, and that John Moyer held the legal title in trust for his father, the complainant; (4) in not finding that Peter Moyer was a purchaser, with due notice of the rights and equities of Adam Moyer, Sr., in the premises; (5) in overruling the plaintiff's exceptions to the master's report; (6) in confirming the master's report; and (7) in dismissing plaintiff's bill with costs.

*Orvis, Bower & Orvis* and *Jno. G. Love* for appellant.

*Thos. H. Murray* and *Hastings & Reeder* for appellees.

PER CURIAM:

The master's report in this case is so clear and well stated, both as to facts and law, that we are relieved from the necessity of a further discussion of the matter in controversy.

Decree affirmed and appeal dismissed, at costs of appellant.